WILLIAM SCHWARTZ, Defendent Below, Plaintiff in Error, v. THE STATE OF DELAWARE, Plaintiff Below, Defendant in Error.

*(January 21, 1936.)*

WOLCOTT, Chancellor, RICHARDS and RODNEY, J. J., sitting.[1]

---

[1] REINHARDT, J., also sat at the argument of this case but died before the opinion was filed.

*James R. Morford* (of Marvel, Morford, Ward and Logan) for Defendant Below.

*P. Warren Green,* Attorney-General, and *Robert H. Richards, Jr.,* Deputy Attorney-General, for the State.

Supreme Court, No. 6, June Term, 1934.

RODNEY, J., delivering the opinion of the Court:

In order to clearly determine the purpose and effect of the Statute it may not be improper to briefly consider the condition of the law prior to its passage.

At the early common law only one degree of principal was recognized in the commission of a crime. It was subsequently recognized, however, that the offense of one who was present but who was not the actual perpetrator of the crime itself was to be considered in a different light from the offense of one who was not present, even though he had aided or counseled the commission of the act. From that time the participants in crime at common law may generally be classified as (1) principals (a) in the first degree (b) in the second degree (2) accessories (a) before the fact (b) after the fact. Principals in crime included all persons who were present (actually or constructively) at the commission of the wrongful act and participated therein, either directly or indirectly, and on the nature of this participation depended the degree of the offense. There was, as a practical matter, little distinction between the two degrees of principal, and the classification of principal in the second degree seems to have been created because, prior to its creation, one who was present but not the actual perpetrator of the crime was considered as an accessory before the fact and could not be tried until the principal had been apprehended and convicted.

Accessories included persons who, in some manner, were connected with crime, either before or after its perpetration, but were not actually present at the time the crime was committed. It will be seen, then, that the offense of being an accessory was derivative and dependent upon the existence of a principal.

It seems to be entirely clear that distinctions between principals and accessories existed only in cases of felony and did not exist in cases of treason or in cases of misdemeanor, but in these latter offenses all participants were considered as principals and could be prosecuted as such. The reasons for the distinctions between treasons and mis-

demeanors, on the one hand, and felonies, on the other, as suggested by 4 *Blackstone Comm.* 36, have been declared to be unsatisfactory, *People v. Bliven,* 112 *N. Y.* 79, 19 *N. E.* 638, 8 *Am. St. Rep.* 701. It is not material for us to pause to consider the reasons for the distinction—it is sufficient that the distinction itself was firmly established.

The pertinent common law sustained no material change by virtue of our Colonial Statutes. In 1719 the penalty of death was prescribed for accessories where the principal was convicted of mayhem or other capital crime; provision was also made for the punishment of accessories receiving stolen goods and for those cases where the accessory lived in a different county from the principal offender (*Volume* 1, *Laws of Delaware,* 68-74). These are, substantially, all of the statutory provisions prior to the original enactment of the Statute we are now considering.

In 1824 a *Revised Code* for Delaware was in course of preparation. Hon. Willard Hall, then United States District Judge, was engaged to prepare a codification of the criminal laws for inclusion in this new revision. This was done, and Judge Hall reported the new Criminal Code in 1826 (*House Journal, Page* 113). This criminal codification was adopted on February 8, 1826, and is found in 6 *Delaware Laws, Pages* 708-747.

*Section* 1 of this Act consists of a long statement of offenses and their punishment. *Section* 2 provides, *inter alia,* "All offenses indictable at common law and not provided for by this or some other Act of the General Assembly, shall be deemed misdemeanors" (See *Section* 4720, *Revised Code of* 1915). *Section* 3 of the *Act of* 1826 included, substantially, the exact words now found as *Section* 4806 of our present *Code,* which we are now considering.

One purpose of *Section* 3 of the *Act of* 1826 (*Section*

4806) seems quite clear. Being an accessory was not made a substantive offense by *Section* 1; *Section* 2 had made all offenses, not specifically mentioned, misdemeanors; *Section* 3 then said that every accessory should be deemed equally guilty with the principal offender and punished in the same manner. In the absence of *Section* 3 all accessories would have been merely guilty of misdemeanors. *Section* 3 made of accessaryship before the fact an independent substantive offense, gave it the name of "accomplice" and, by providing that an accomplice could be "prosecuted, tried and convicted without the conviction, trial or indictment of the principal," it removed the derivative and dependent feature of the common law by which an accessory could only be tried after the trial and conviction of the principal. At common law the principal was tried before the accessory and the accessory could be tried first only with his consent, and, even where the principal and accessory were tried together, it was the duty of the jury to first determine the guilt of the principal. 18 *Columbia L. Rev.* 471.

There is no intent evidenced in the Statute to make the accessory a principal. Indeed, it would have been curious if such had been the case. While modern criminal legislation has, in many jurisdictions, made an accessory a principal and authorized prosecution as such, yet this desirable statutory change did not manifest itself until long after 1826. There is no evidence that Delaware originated the advanced thought in these prosecutions or that its Statute of 1826 was intended to have such effect. The change was not made in England until 1848 (11 and 12 *Victoria, c.* 46) or in Pennsylvania until 1860, when that state adopted the English Act. While we have not examined the Statutes of American jurisdictions to ascertain the date of their first enactment, yet the Statutes of upwards of thirty such jurisdictions have been reviewed. These all, in varying language, provide that the accessory shall be considered as a

principal and expressly stipulate that he may be indicted, tried, convicted and punished in all respects as a principal or use some language nearly or fully equivalent thereto. Neither these Statutes nor the decisions construing them are pertinent in the present case. Our Statute not only does not expressly make the accessory a principal but from it may be drawn the plain intendment to the contrary.

In addition to the saving of accessories from the classification as misdemeanors, heretofore mentioned, another purpose is plainly indicated. The Statute includes under the general term "accomplice" all who "abet, procure, command or counsel" another to commit a crime or misdemeanor. This term accomplice, then, includes those who would have been, at common law, either principals in the second degree or accessories before the fact. When the Statute, by its concluding paragraph, provided that the accomplice might be prosecuted without the prior prosecution and conviction of the principal, it must have contemplated the very case of the accessory before the fact, for the principal in the second degree, prior to the enactment of this Statute, could have been so prosecuted and, indeed, that was the origin of the classification of second degree principal. If, therefore, under the act, an accessory (now an accomplice) was to be considered as a principal, then the concluding paragraph was entirely superfluous and of no effect whatever. If, on the contrary, the accessory kept his known and existing status as an accessory distinct from the status of a principal, then the concluding paragraph filled a great need in the enforcement of criminal law, for under it he could now be prosecuted prior to the prosecution of the principal, which could not be done under the common law or prior to the passage of the Statute.

Our conclusion is that the Statute did not make, nor was it intended to make, the accessory a principal. Our con-

clusion is supported by every decision construing an analogous Statute which has been called to our attention. No case has been found where the accessory was construed to be a principal under a Statute which merely provided the same punishment for an accessory or accomplice which had been provided for the principal. *McKeen v. State, 7 Tex. App.* 631; *Able v. Com.*, 5 *Bush.* (*Ky.*) 698; *Stricklin v. Com.*, 83 *Ky.* 566; *Statev. Ricker*, 29 *Me.* 84; *Pierce v. State*, 130 *Tenn.* 24, 168 *S. W.* 851, *Ann. Cas.* 1916 *B*, 137; *Thornton v. Com.*, 24 *Grat.* (65 *Va.*) 657; *Hatchett v. Com.*, 75 *Va.* 925; *Rix v. State*, 33 *Tex. Cr. R.* 353, 26 *S. W.* 505; *State v. Roberts*, 50 *W. Va.* 422, 40 *S. E.* 484.

The Attorney-General, however, contends that in Delaware it has been an established practice to indict an accessory before the fact as a principal and that therefore the Statute has received that construction. It is conceded that in no known case has the question been raised or passed upon. Without conceding that a practice, continued without objection, could have the effect of imposing a fixed construction upon criminal statute, we desire briefly to consider to what extent, as shown by the reported cases, the suggested practice had existed. *State v. Brinte and Jiner*, 4 *Penn.* 551, 58 *A.* 258; *State v. Brown and Sharp*, 2 *Boyce* (25 *Del.*) 405, 80 *A.* 146; and *State v. Williams*, 3 *Boyce* (26 *Del.*) 102, 80 *A.* 1004, were all cases involving felonies. So little was the alleged practice regarded as being embedded in the law of the State that, in the cited cases, parties who, at common law, would have been regarded as principals in the second degree and so indictable as principals, were nevertheless specifically charged as having been present, aiding and abetting in the commision of the crime. In misdemeanor cases, it will be recalled, no distinction was made at common law between principals and accessories but all were indictable as principals. *State v. McCallister and Little*, 7 *Penn.* 301, 76 *A.* 226; *Walsh*

*et al. v. State,* 3 *W. W. Harr.* (33 *Del.*) 353, 136 *A.* 160, were cases involving misdemeanors and so could, under the common law, have been indicted as principals, yet, notwithstanding such fact, the indictments included counts as accessories. We have examined all the reported cases in this State which have been cited to us and in all of them, with one exception, where an accomplice or accessory was indicted as a principal, it clearly appears either that the accomplice was present at the time of the commission of the offense or that the offense was a misdemeanor, and in either of these cases that course of procedure was proper at common law. The only exception to the stated classification in *State v. Pullen,* 3 *Penn.* 184, 50 *A.* 538. That case involved a felony but the facts do not show whether the defendant was or was not present at the actual commission of the crime. Certainly there is no indication that the question here discussed was raised in the cited case. Our conclusion is that, from the standpoint of practice, the procedure has been so varied that no uniform rule upon the subject can be said to have been accepted.

Because the defendant in the present case was indicted as a principal and the evidence plainly shows that he was not present at the time of the commission of the offense, we think that, under the existing statutory provision, the conviction cannot stand, and the judgment of the court below is reversed.