WILLIAM BENOIT and ROBERT J. DONOHUE, a/k/a John Lynch, Jr., Appellants, v. THE STATE OF DELAWARE, Appellee.

*(March* 30, 1962.)

SOUTHERLAND, Chief Justice, and WOLCOTT, Justice, and DUFFY, Judge, sitting.

*Robert C. O'Hora* and *John P. Daley* for appellants.

332

*Charles L. Paruszewski* and *Thomas Herlihy, III*, Deputy Attorneys-General, for the State.

Supreme Court of the State of Delaware, No. 58, 1961.

SOUTHERLAND, C. J.:

The appellants, Benoit and Donohue, were indicted for fourth degree burglary, *i.e.*, breaking and entering a building, or a room, or any part of a building, with intent to commit a crime. 11 *Del. C.* § 395. The indictment charged them with breaking into the office of the United States Savings Bond Division in Wilmington with intent to commit larceny. They were acquitted of the intent and found guilty of breaking and entering. They appeal.

Two contentions are made here:

(1) That the evidence, under the circumstantial evidence rule, is insufficient.

(2) That the charge of the court respecting the criminal responsibility of defendants as principals was erroneous.

(1)

The case made by the State was as follows:

On the southwest corner of Tenth and Orange Streets in Wilmington stands the Assimos Building, fronting on Tenth Street. It houses various offices and other business places. It has four stories. On the third floor is the Savings Bond office, with a rear window looking south. The other apartment on that floor and the apartment on the fourth floor were vacant at the time of the events herein related. The usual access to the Assimos Building, and hence to the Savings Bond office, is through a large double door on Tenth Street. This door opens into a small vestibule from which leads a stair going upward and another stair going down to the basement. This

vestibule affords no access to the ground floor premises, which are occupied by a cutlery store and a restaurant, each having its own entrance. A smaller door to the west of the main door, also on the Tenth Street side of the building, opens upon a stairway which leads up to the fourth floor of the building and to a fire escape. On the third floor a door in the Savings Bond office affords access to this staircase; but apparently there is no access to it from the second floor.

Adjoining the rear of the Assimos Building on the south, and facing on Orange Street, is a three-story building No. 925 Orange Street. Mr. John L. La Manna was the occupant of the two upper floors of this building. At about 9:15 p.m. on the evening of September 5, 1960 (Labor Day), he heard unusual noises on the roof of the next door building. Ascending to his third floor, he observed that a rear window on the third floor of the Assimos Building was open. He notified the police. Two patrolmen, officers Sekszinski and Patton, came to interview him and then went to the Assimos Building. The officers tried the doors at both entrances. Both doors were locked. Returning to 925 Orange Street, they went up to the third floor. From this floor a window gives access to the second floor roof, that is, to a roof extending between the third floor apartment of 925 Orange Street and the southerly wall of the third and fourth floors of the Assimos Building. The officers went out upon the roof. Using a stepladder that was leaning against the wall near the window, they entered the room through the window. It was the Savings Bond office. On the preceding Friday afternoon, when the director in charge had left the office, the rear window was locked with an ordinary sash lock. The janitor, who entered the office Sunday afternoon, had not touched it. When the officers entered, they found the latch of this lock had been broken off and was lying on the floor. On a chair under the open window was a suitcase containing a set of tools, including a jimmy, a pinchbar, a tank of oxygen, a tank of acetylene gas, pressure gauges, and an acetylene torch.

Officer Patton heard a noise as of someone walking on the roof. He opened the door giving access to the stairway leading to the fire escape, and went up the stairs leading to the roof. Sekszinski followed him through the door. Looking down, Sekszinski saw that the door to Tenth Street at the foot of the staircase was closing. He descended the stairs, went out on Tenth Street, and met Miss Loretta Denney, who had been standing in front of the door waiting for a car that was to pick her up. She had seen a man go out the door just before the officer. He was dressed in dark clothes, wore black gloves, and appeared to be in a hurry. She later identified him as Benoit.

In the meantime, Officer Patton had ascended to the door to the roof. This door was open. It had been pushed out and the lock was broken. The officer walked over the roof flashing a light in front of him. He found Donohue hiding behind an air vent. Donohue shouted: "Don't shoot. I give up." Patton arrested him and asked what he was doing on the roof. Donohue said he was running; someone was chasing him and he thought they were going to rob him. At that time he gave his name as Lynch. He was afterward identified as Donohue through a telephone call from New York.

On September 16 Benoit was taken into custody in a local bail bondsman's office. He gave a New York address. He said he had come to Wilmington to get bail for a friend. Later, at the police station he was shown the set of tools and asked whether they were his. He refused either to admit or deny ownership, saying: "You can be charged with possession." He exhibited familiarity with the use of the tools, and told the examining officers how to use different mixtures of acetylene and oxygen. Looking at the safe in the office, he said that he wouldn't use a burning equipment to open it; he would just "punch it".

Thereafter Benoit was driven around the Wilmington business district. He showed familiarity with certain features

of the city. Pointing to the door of the Assimos Building he said: "Remember that door".

The forgoing is a summary of the State's evidence.

For the defense, Benoit took the stand and testified that he had come to the bail bondsman's office to arrange bail for Donohue. Donohue was his brother-in-law and business associate. He denied that he had ever been in Wilmington before September 16.

Donohue did not testify.

■ The foregoing evidence, if the jury believed it, was clearly sufficient to justify the conviction. Defendants' arguments to the contrary are difficult to follow:

■ As to Benoit, the identification of Miss Denney is assailed as untrustworthy because of her testimony that Benoit's face was pockmarked, whereas it is said that in fact it was not pockmarked; and because of some confusion in her identification of the door out of which Benoit came. These matters were for the jury. An argument is made that the testimony about burglar's tools was not admissible, but no objection was made to it. In any event the testimony was admissible because Benoit's answer was evasive. It was for the jury to say whether an innocent man would not have denied possession of the burglar's tools. *State v. Bryson*, 47 *Del.* 106, 87 A. 2d 640. It is argued that Benoit's statements were capable of an innocent interpretation. Once again, this was for the jury.

As to Donohue, it is suggested that it is not definitely shown that he broke the door to the roof because it may have been broken at an earlier date. The point is immaterial.

It is also said that in any event his presence there may have been innocent, because he may have had legitimate business in the building. It was Labor Day.

To sum up: the jury would have been justified, upon all the evidence, in finding that the defendants in some way got upon the building roof; that they broke the lock of the office window from the outside; that they entered through the window and in some way took the box of burglar's tools with them or drew it up after their entry through the window; that before they had time to attempt to carry out whatever plan they had formed they were surprised by police officers crossing the roof; and that they then fled, one to the roof and one to the street below.

Defendants' contentions to the contrary are wholly without merit.

(2)

Upon the responsibility of one participating in a crime to be convicted as a principal the court charged the jury as follows:

"In order to find each guilty of the crime charged, you must find that each was actually present at the time and place of the offense and that each did, in some manner, aid, counsel, or assist in the perpetration of the crime charged."

This portion of the charge was objected to by counsel below on the ground—

* * * "that the jury was not charged as requested to the effect that it was the obligation of the State to prove him guilty as a principal."

This objection we cannot understand, since the court did say to the jury exactly what counsel asserted it did not say. In fact, what counsel really argued below, at some length, was (in effect) that the proof showed that the defendants were at most only accessories to a crime committed by another, and could not be convicted as principals under the rule of *Schwartz v. State*, 37 *Del.* 484, 185 *A.* 233. In this Court defendants are represented by other counsel. It is not clear to us that the objection below is renewed here. In any event the contention is merely a rehash of the argument, al-

ready rejected, that the evidence was insufficient to show that these defendants broke into the building.

The judgment below is affirmed.