Quinton TURNER, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

No. 237, 2010.

Supreme Court of Delaware.

Submitted: May 4, 2011.

Decided: July 12, 2011.

---

Christopher D. Tease, Esquire, (argued), Wilmington, Delaware, for Appellant.

Timothy J. Donovan, Jr., Esquire (argued), Department of Justice, Wilmington, Delaware, for Appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS, and RIDGELY, Justices, constituting the Court en Banc.

BERGER, Justice:

In this criminal appeal we consider whether the trial court erred in denying appellant's motion to suppress, or in giving a jury instruction. Appellant was a passenger in a car that was stopped for a seatbelt violation. He argues that the traffic stop was a pretext, and therefore violated the Delaware Constitution. Appellant also complains that, because there was no evidence that he was an accomplice in the charged drug activities, the trial court should not have given an accomplice liability instruction to the jury. We find no merit to either argument, and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Quinton Turner, Lamar Tann, and Clyde Holmes were charged with trafficking in cocaine and related offenses after the car they were riding in was stopped by the police in 2009. The relevant facts, as set forth in *Tann v. State*,[1] are as follows:

On June 20, 2009, Officers Timothy Golden and Roger Jackson, of the New Castle County Police, were patrolling the area around Sixth Avenue and East Hillview Avenue in New Castle, Delaware. Golden and Jackson were on the lookout for a white Mercury Marquis. Another officer had received a tip from a confidential informant that drug sales were being conducted in that vicinity from such a car. The other officer alerted Golden and Jackson. A white Mercury Marquis drove by a few minutes later, and Golden noticed that the front seat passenger was not wearing a seatbelt. The officers stopped the car. Golden testified that the reason for the stop was the seatbelt violation.

There were three people in the car— Tann in the driver's seat, Turner in the front passenger seat, and Holmes in the back passenger area. Golden approached the driver's side of the car and asked Tann for his license, registration and proof of insurance, which Tann provided. Golden noticed that Tann was shaking uncontrollably, and Golden attributed the shaking to nervousness. He also saw a box of plastic sandwich baggies on the back seat. Jackson approached the passenger side of the car. He asked Turner and Holmes for identification, but only Holmes had an ID. Turner told Jackson that he was carrying $700 in cash.

Golden returned to his patrol car and ran computer background checks on Turner and Tann. The background checks revealed that Turner was wanted on an outstanding arrest warrant. Tann had no outstanding warrants, but he was listed as

---

1. 21 A.3d 23 (Del.2010).

having been arrested in 2003 for possession of a weapon with a removed serial number. Other officers, who arrived after the traffic stop, arrested Turner. After Turner's arrest, Jackson asked Tann to step out of the car. Immediately before Tann emerged from the car, he made a sharp movement as if he were reaching for something under his seat. Jackson feared that Tann was reaching for a gun, so he handcuffed Tann.

Golden then asked Holmes to step out of the car. As Holmes did so, Golden saw that one of his pockets was bulging to such an extent that Golden could see cocaine inside the pocket. He arrested Holmes. In a search incident to arrest, the police discovered four bags of cocaine, a razor blade, and small plastic bags in Holmes' possession. In their first search of the car, the police discovered 44 small plastic bags of cocaine under the driver's seat. In a subsequent search of the car, the police found a digital scale with white residue on it.

Turner moved to suppress the evidence recovered from the car. The Superior Court denied the motion. Turner was convicted of trafficking in cocaine and related offenses. This appeal followed.

## DISCUSSION

■ Turner first argues that the trial court abused its discretion by instructing the jury on accomplice liability. He points out that the State's drug trafficking expert described the three co-defendants as part of a "classic" drug dealing arrangement where one person holds only the money; one person holds the large quantity of drugs; and one person holds the individually bagged drugs. Under this theory, Turner would be a principal, not an accomplice. Thus, Turner contends that the evidence did not support an accomplice liability instruction.

In addition, Turner argues that by giving the accomplice liability instruction, the trial court confused the jury. He says that the confusion arose because Turner also was charged with conspiracy. Accomplice liability only requires a finding that Turner aided the others in the commission of an offense, whereas conspiracy requires a finding that Turner agreed to commit the drug crimes. Because one could aid another without there being any agreement, Turner contends that accomplice liability can be based on a "lower" level of culpability than conspiracy. Turner argues that the difference between "aiding" and "agreeing" confused the jury.

Turner's argument fails for two reasons. First, the very evidence that he relies on supports a finding that Turner was a principal with respect to his own conduct, and an accomplice to Tann and Holmes. An accomplice is "guilty of an offense committed by another person when ... [i]ntending to promote or facilitate the commission of the offense [the accomplice] ... aids ... the other person in planning or committing it."[2] The State's drug expert testified that drug dealers often divide responsibility by having one person hold the drugs, one person hold the money, and one person hold the individually wrapped drugs. The evidence established that Turner, Tann and Holmes had followed this classic pattern. Thus, the jury could have decided that Turner was either a principal or an accomplice, and the trial court did not err in giving the accomplice liability instruction. Second, Turner points to no language from the jury instructions that would support his claim of jury confusion. The jury was given a correct statement of the offense of conspiracy and the basis for accomplice liability.

**2.** 11 *Del. C.* § 271(2).

■ Turner also argues that the trial court erred in denying his motion to suppress the money seized when he was arrested. He contends that the traffic stop was pretextual, and that under *State v. Heath,*[3] such stops violate Article 1, Section 6 of the Delaware Constitution. He also says that the Superior Court did not make an express finding as to whether or not the stop was a pretext. Accordingly, Turner asks this Court to remand the case and instruct the trial court to make that factual finding.

The trial court did not discuss *Heath,* another Superior Court decision, in its ruling denying the motion to suppress. Instead, after noting that a traffic violation creates probable cause for a stop, the trial court held:

In *Whren v. U.S.* [517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)], the United States Supreme Court declared an officer's pretext to conduct a stop immaterial, so long as the officer has contemporaneous reasonable suspicion of criminal activity. Similarly, the Delaware Supreme Court recognizes an officer's discretion in conducting a traffic stop and does not rely on an officer's actual, subjective motives to determine the reasonableness of an officer's conduct.

Officer Golden witnessed Turner in the front passenger seat of the Grand Marquis with an unfastened seatbelt, in violation of 21 *Del. C.* § 4802(a)(2). These facts constitute a reasonable articulable suspicion that Tann, the driver, committed a traffic violation. There-fore, the officers had probable cause to conduct a traffic stop.[4]

The trial court did not address Turner's constitutional argument. Rather, it relied on this Court's decision in *Traylor v. State,*[5] which did not consider whether Article 1, Section 6 of the Delaware Constitution prohibits pretextual stops.

■ In *Heath,* the Superior Court held that the Delaware Constitution prohibits "purely" pretextual traffic stops. That decision was not appealed, and *Heath* has not been followed in any other Superior Court decisions. Turner cannot rely on *Heath* as a basis for his constitutional claim. As this Court has stated several times, "[t]he proper presentation of an alleged violation of the Delaware Constitution should include a discussion and analysis of one or more of the criteria set forth in [*Jones v. State,* 745 A.2d 856 (Del.1999)] ...."[6] Those criteria include, "textual language, legislative history, preexisting state law, structural differences, matters of particular state interest or local concern, state traditions, and public attitudes."[7] Turner has not properly presented a constitutional argument. Accordingly, the argument has been waived, and there is no reason to remand to the Superior Court to further consider the matter.

## CONCLUSION

Based on the foregoing, the judgments of the Superior Court are hereby affirmed.

**3.** 929 A.2d 390 (Del.Super.2006).

**4.** *State v. Tann, State v. Turner,* 2010 WL 4060304 at *2 (Del.Super.) (Citations omitted.)

**5.** 458 A.2d 1170, 1174 (Del.1983).

**6.** *Ortiz v. State,* 869 A.2d 285, 291 n. 4 (Del. 2005) (Citations omitted.)

**7.** *Ibid.*