IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,      :

                        :      ID No. 1701018212

    v.                  :      In and For Kent County

                        :

ERICK G. BORDLEY,     :

                        :

    Defendant.         :

## ORDER

Submitted: July 10, 2017
Decided:  July 11, 2017

On this 11th day of July 2017, having considered Defendant Erick Bordley's ("Mr. Bordley") Motion to Suppress and the State's response, it appears that:

1.      Mr. Bordley challenges the validity of his detention and the subsequent search of his vehicle performed by Officer Macauley on January 29, 2017. The facts cited herein are as they appear to the Court following consideration of the parties' submissions and argument at the hearing on July 10, 2017.

2.      In early January, a cooperating defendant informed Officer Macauley that Mr. Bordley was dealing large quantities of heroin, drove a black BMW, and lived in the Canterbury Crossing neighborhood. Officer Macauley also learned that Mr. Bordley had a criminal history. A subsequent computer inquiry revealed that Mr. Bordley had recently been in a motor vehicle collision while driving a black BMW and that the BMW had been disabled and towed. Officer Macauley also learned that Mr. Bordley was now driving a 2016 gray Jeep Grand Cherokee.

3.      Officer Macauley was on patrol on the date in question when he saw Mr. Bordley operating a 2016 gray Jeep Cherokee without wearing a seatbelt. Officer Macauley followed the vehicle until it entered a McDonald's parking lot. Officer Macauley activated his emergency lights and initiated a traffic stop. He approached

Mr. Bordley's vehicle on foot. Mr. Bordley handed the officer the relevant documentation and informed the officer that he had been in an accident recently and was driving a rental. Officer Macauley asked where Mr. Bordley was going, and Mr. Bordley stated he lived in Maryland but went back and forth between Maryland and Delaware and had stopped at the McDonald's for breakfast.

4. During the above exchange, Officer Macauley noticed that Mr. Bordley was nervous: he was "visibly shaking," failed to make eye contact, and his voice was shaky. The officer saw no luggage in the car and noticed what appeared to be recently purchased food in the back seat. Officer Macauley instructed Mr. Bordley to remain in his vehicle while Officer Macauley returned to his patrol vehicle. At that time, Officer Macauley radioed for a K-9 unit to respond to assist with a search of the vehicle.

5. Officer Macauley returned to Mr. Bordley's vehicle and ordered him to exit his vehicle. As Mr. Bordley exited, a large amount of United States currency fell out of his pocket. Officer Macauley patted down the outer layer of Mr. Bordley's clothing, but no weapons were detected.

6. Thereafter, the K-9 unit arrived and performed an exterior sniff of the vehicle. This K-9 search indicated that narcotics were detected in the vehicle. When Officer Macauley searched the vehicle, he discovered drug contraband. Mr. Bordley was then arrested.

7. In his motion to suppress, Mr. Bordley argues that (1) pursuant to *State v. Heath*,[1] the stop was an illegal pretextual stop; (2) Officer Macauley lacked reasonable suspicion to initiate the traffic stop; (3) Officer Macauley lacked probable cause to search the vehicle; and (4) the extended questioning of Mr. Bordley and the canine sniff of the car, absent reasonable suspicion or probable cause, exceeded the

---

[1] 929 A.2d 390 (Del. Super. Ct. 2006).

2

proper scope of the traffic stop. For these reasons, Mr. Bordley argues the evidence should be suppressed.

8.     The State responds that the traffic stop was validly initiated and that Officer Macauley had reasonable suspicion to further detain Mr. Bordley until a K-9 unit could arrive and perform a dog sniff on the vehicle. The State bases this finding of reasonable suspicion on (1) nervousness, (2) use of a rental vehicle, (3) criminal history, (4) presence in a high-crime area, (5) unsatisfactory answers to the officer's questions, and (6) driving in a circuitous fashion.

9.     The burden is on the State to justify a warrantless search or seizure.[2] In a suppression hearing, the Court sits as the finder of fact and evaluates the credibility of the witnesses.[3] The party with whom the burden rests must persuade the Court by a preponderance of the evidence.[4]

10.     Police are authorized to rely on an informant's tip[5] as a basis for probable cause or reasonable suspicion, when shown to be reliable or trustworthy through the tip's specificity, corroboration by other facts within the officer's knowledge, and ability to predict the future behavior of the suspect.[6]

---

[2] *State v. Holmes*, 2015 WL 5168374, at *3 (Del. Super. Ct. Sept. 3, 2015) *aff'd* 149 A.3d 227 (Del. 2016).

[3] *State v. Hopkins*, 2016 WL 6958697, at *2 (Del. Super. Ct. Nov. 28, 2016).

[4] *State v. Lambert*, 2015 WL 3897810, at *3 (Del. Super. Ct. June 22, 2015).

[5] *State v. Saunders*, 2012 WL 6915206, at *3 (Del. Super. Ct. Dec. 28, 2012) (analyzing tip of a cooperating defendant under an informant framework).

[6] *Jones v. State*, 745 A.2d 856, 870 (Del. 1999) (stating the relevant factors for finding of reasonable suspicion as "(1) the specificity of the anonymous tip; (2) independent police corroboration of the facts underlying the tip; and (3) the ability of the tipster to predict future behavior by the suspect.").

11.    A police officer who observes a traffic violation has probable cause to stop the vehicle and its driver.[7] An officer's subjective intentions play no role in the Court's finding of probable cause.[8] The scope and duration of a traffic stop must be reasonably related to its initial justification,[9] namely, addressing the traffic infraction.[10] The stop should last "no longer than is necessary[;]"[11] an officer performing a lawful traffic stop may not deviate into investigation of other offenses, unless the officer observes independent facts sufficient to justify such additional intrusion.[12] A "seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably

---

[7] *Holden v. State*, 23 A.3d 843, 847 (Del. 2011) (citing *Whren v. United States*, 517 U.S. 806, 810 (1996)).

[8] *See e.g.*, *Whren v. United States*, 517 U.S. 806, 813 (1996); *State v. Seth*, 2017 WL 2616941 at *3 (Del. Super. Ct. Jun. 16, 2017); *State v. Stevens*, 2017 WL 2480803, at *2 & n.5 (Del. Super. Ct. June 8, 2017).

[9] *Holden*, 23 A.3d at 847 (Del. 2011); *Caldwell v. State*, 780 A.2d 1037, 1046 (Del. 2001); *State v. Chandler*, 132 A.3d 133, 140 (Del. Super. Ct. 2015), *as corrected* (April 14, 2015). *See Rodriguez v. United States*, 135 S. Ct. 1609, 1621 (2015); *Florida v. Royer*, 460 U.S. 491, 500 (1983) (plurality opinion).

[10] "Typically, such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Rodriguez* 135 S. Ct. at 1615 (citing *Delaware v. Prouse*, 440 U.S. 648, 658–660 (1979)); *Caldwell*, 780 A.2d at 1047 (Del. 2001) (describing the tasks to be performed as "issu[ing] a citation or warning and . . . run[ning] routine computer checks").

[11] *Rodriguez* 135 S. Ct. at 1614 ("Like a *Terry* stop, the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop and attend to related safety concerns . . . . Authority for the seizure ends when tasks tied to the traffic infraction are—or reasonably should have been—completed.") (citations omitted); *Royer*, 460 U.S. at 500 (holding that the Fourth Amendment's "protection is not diluted in those situations where it has been determined that legitimate law enforcement interests justify a warrantless search: the search must be limited in scope to that which is justified by the particular purposes served by the exception.").

[12] *Caldwell*, 780 A.2d at 1047; *State v. Dewitt*, 2017 WL 2209888, at *2 (Del. Super. Ct. May 18, 2017).

required to complete that mission."[13] Naturally, this rule applies when a stop is prolonged for the purpose of employing a drug sniffing dog: dog sniffs conducted in relation to traffic stops are unlawful when they prolong the stop.[14]

12. Despite the above, a traffic stop may be lawfully prolonged when an officer has reasonable suspicion that would warrant further investigation.[15] Reasonable suspicion is determined based on the "totality of the circumstances as viewed through the eyes of a reasonable, trained police officer in the same or similar circumstances, combining objective facts with such an officer's subjective interpretation of those facts."[16]

13. Here, the Court finds by a preponderance of the proof that Officer Macauley observed Mr. Bordley commit a traffic infraction: failing to wear his seatbelt. Thus, the initial traffic stop was validly supported by probable cause. The Court declines Mr. Bordley's invitation to analyze the officer's subjective intent by following *Heath*.[17]

14. When Officer Macauley continued to hold Mr. Bordley, despite having performed all required actions associated with a traffic stop, this further detention

---

[13] *Illinois. v. Caballes*, 125 S. Ct. 834, 837 (1983).

[14] *Rodriguez*, 135 S. Ct. at 1616.

[15] 11 Del. C. § 1902; *Rodriguez*, 135 S. Ct. at 1614.

[16] *Jones v. State*, 745 A.2d 856, 861 (Del. 1999) (citing *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)). *See Terry v. Ohio*, 392 U.S. 1, 21 (1968).

[17] This Court has repeatedly declined to follow *State v. Heath*, 929 A.2d 390 (Del. Super. Ct. 2006). *See e.g., State v. Seth*, 2017 WL 2616941 (Del. Super. Ct. June 16, 2017); *State v. Stevens*, 2017 WL 2480803, at *2 & n.5 (Del. Super. Ct. June 8, 2017); *State v. Hall*, 2017 WL 1449915, at *1 (Del. Super. Ct. Apr. 21, 2017); *State v. Darling*, 2007 WL 1784185, at *4 (Del. Super. Ct. June 8, 2007), *as corrected* (July 3, 2007). *See also Whren v. United States*, 517 U.S. 806, 813 (1996) ("[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis"); *Turner v. State*, 25 A.3d 774, 777 (Del. 2011) (questioning *Heath*).

was invalid unless independently supported by reasonable suspicion.[18] The Court must therefore turn to consider whether Officer Macauley had reasonable suspicion warranting the continued detention of Mr. Bordley.

15. As an initial matter, the cooperating defendant's tip is not supportive of a finding of reasonable suspicion. No information has been presented to the Court that the informant has proven to be trustworthy or reliable. Nor was the information tendered to the police specific: the informant generically advised that Mr. Bordley was "dealing large quantities of heroin" while saying nothing as to the particulars of this alleged enterprise. No evidence has been offered showing that the tip was corroborated by facts within the officer's knowledge. The tip also had no meaningful predictive value; although the cooperating defendant identified Mr. Bordley's vehicle as a black BMW, and indicated he had some connection to Canterbury Crossing, this was discernible to any member of the public who had seen Mr. Bordley driving his car in the area.[19]

16. With regard to other actions observed by Officer Macauley, Delaware Courts have held that nervousness, criminal history, and use of a rental vehicle are not supportive of reasonable suspicion unless used in conjunction with "more tangible, objectively articulable indicators of criminality."[20] This Court's decision in *State v. Chandler*[21] is apposite. In *Chandler*, the State argued that reasonable

---

[18] *Caldwell v. State*, 780 A.2d 1037, 1047 (Del. 2001).

[19] *Alabama v. White*, 496 U.S. 325, 332 (1990) (finding a tip's predictive value to be supportive of reasonable suspicion when "the anonymous [tip] contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted.").

[20] *State v. Chandler*, 132 A.3d 133, 144–45 (Del. Super. Ct. 2015), *as corrected* (Apr. 14, 2015); *State v. Miliany-Ojeda*, 2004 WL 343965, at *6 (Del. Super. Ct. Feb. 18, 2004); *State v. Huntley*, 777 A.2d 249, 256 (Del. Super. Ct. May 23, 2000).

[21] 132 A.3d 133.

6

suspicion may validly be based on an officer's observation of "nervous demeanor, prior use of an alias in 1998, use of a rental vehicle, and prior criminal history."[22] The *Chandler* court determined that even in combination, such factors were not supportive of a finding of reasonable suspicion to justify prolonged detention of defendant and his vehicle.[23]

17. Here, the only additional factors alleged to support a finding of reasonable suspicion are that Mr. Bordley was in a "high crime area," that he took a "circuitous route" to the McDonalds, and that the arresting officer was unsatisfied with certain of Mr. Bordley's answers to the officer's questions regarding his travel plans. The Court finds these observations are insufficiently supportive of reasonable suspicion, [24] particularly in light of potential innocent explanations of the above.[25] While innocent explanations are not determinative of whether an act is supportive of

---

[22] *Id.* at 149.

[23] *Id.*

[24] *Illinois v. Wardlow*, 528 U.S. 119, 139 (2000) ("presence in a high crime neighborhood is a fact too generic and susceptible to innocent explanation to satisfy the reasonable suspicion inquiry"); *Caldwell v. State*, 780 A.2d 1037, 1050 (Del. 2001) ("A suspect's nervous behavior and odd assertion that he did not know the name of his passenger may or may not, in some situations, provide the officer with reasonable suspicion justifying further limited questioning of the suspect and his passenger."); *Jones v. State*, 745 A.2d 856, 871 (Del. 1999) ("Reasonable and articulable suspicion cannot be based on a defendant's presence in a particular neighborhood at a particular time of day with no independent evidence that the defendant has committed, is committing or is about to commit a crime."); *Chandler*, 132 A.3d at 149 (not finding reasonable suspicion to prolong traffic stop after considering similar factors).

[25] In short: many innocent drivers are nervous when they speak to the police, there are many lawful and innocent reasons to use a rental vehicle, persons with criminal history are not inherently suspect to be committing a crime, innocent persons are often present in high-crime areas, persons driving circuitously may be lost or confused, and, finally, it is not unheard of for someone to eat breakfast twice.

probable cause,[26] they are relevant to the Court's consideration of what "common sense conclusions" can be drawn respecting the conduct of Mr. Bordley in this case.[27]

18.    The Delaware Supreme Court's decision in *Harris v. State* [28] is instructive here. In that case, an officer testified that he profiled the defendant, who was exiting a train station and entering a vehicle outside, as a likely drug courier by observing certain behaviors and body language that he asserted were often exhibited by drug couriers.[29] The officer in *Harris* observed that the defendant "(1) looked over his shoulder[;] (2) met another man in the lobby; (3) used a payphone; (4) 'popped' his head up in the backseat; and (5) looked out the rear window." When prompted, the officer was unable to provide concrete reasons for why these factors should be interpreted in a way that justifies the suspicion that criminal activity was afoot.[30] The *Harris* court determined that "[i]t is possible for factors, although insufficient individually, to add up to reasonable suspicion, but it is impossible for a combination of wholly innocent factors to combine into a suspicious conglomeration unless there are concrete reasons for such an interpretation."[31]

---

[26] *State v. Stewart*, 2011 WL 494734, at *4 (Del. Super. Ct. Jan. 31, 2011) ("possible innocent explanations do not preclude a determination that reasonable suspicion for a detention existed"). *See United States v. Sokolow*, 490 U.S. 1, 10 (1989) ("the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts") (quoting *Illinois v. Gates*, 462 U.S. 213, 243–44 n. 13f (1983)).

[27] *United States v. Cortez*, 449 U.S. 411, 418 (1981) (articulating that determinations of reasonable suspicion do not deal with "hard certainties," but rather with "certain common sense conclusions about human behavior").

[28] *Harris v. State*, 806 A.2d 119 (Del. 2002).

[29] *Id.* at 129.

[30] *Id.*

[31] *Id. at* 128.

8

19. Similarly here, the Court considers Mr. Bordley's words and actions to be wholly innocent. The State's submissions and Officer Macauley's testimony at the hearing demonstrated no compelling reason that the factors observed demonstrate the likelihood of criminal activity. If officers were given authority to detain motorists on the bases that the State argues are sufficient here, "a very large category of presumably innocent [persons] . . . would be subject to virtually random seizures."[32] Officer Macauley had no indication that Mr. Bordley or the vehicle were connected with any tangible indicators of criminal activity.[33] The Court finds that a reasonable officer could have only a hunch that possible illegal drug activity was afoot.

20. Based on the totality of the circumstances, Officer Macauley lacked the reasonable articulable suspicion required to justify the further detention of Mr. Bordley. The lengthy detention of Mr. Bordley, the dog sniff of the exterior of his vehicle, and the subsequent search of the interior of his vehicle, all lacked adequate justification. The Court finds that the duration and intrusiveness of the traffic stop were not reasonably related to the justification for the stop and were not supported by independent facts justifying the officer's conduct.

21. As a result of this search and seizure that exceeded the lawful duration and scope afforded for traffic stops, police discovered contraband evidence in the vehicle and a large quantity of United States currency on Mr. Bordley's person. Because these discoveries occurred following, and by exploitation of, the unlawfully protracted and intrusive detention, Mr. Bordley's rights under the Fourth Amendment of the United States Constitution and Article I, Section 6 of the Delaware

---

[32] *Reid v. Georgia*, 448 U.S. 438, 441 (1980).

[33] *See State v. Chandler*, 132 A.3d 133, 149 (Del. Super. Ct. Apr. 2, 2015), *as corrected* (Apr. 14, 2015).

Constitution were violated, and all evidence gathered as a result of the traffic stop and subsequent search must be suppressed.[34]

**WHEREFORE**, Defendant Erick Bordley's motion to suppress is hereby **GRANTED**.

   **IT IS SO ORDERED.**

/s/ Noel Eason Primos
Judge

NEP:jb

---

[34] *Caldwell v. State*, 780 A.2d 1037, 1051–52 (Del. 2001).