ROBERT STEELE, GEORGE STEELE and WILLIE SPEARS, Appellants, v. STATE OF DELAWARE, Appellee.

(*May* 8, 1959.)

SOUTHERLAND, C. J., WOLCOTT and BRAMHALL, J. J., sitting.

*James P. D'Angelo, Stanley T. Czajkowski,* and *Irving Morris* for appellants.

*Max S. Bell, Jr.,* Deputy Attorney-General, for appellee.

Supreme Court of the State of Delaware, No. 31, 1958.

BRAMHALL, J.:

The questions involved in this case relate (1) to the alleged unconstitutionality of a statute providing that the court may impose sentence for certain common law offenses as it in its discretion may determine, and (2) to the alleged abuse of discretion by the trial judge in imposing sentence in excess of that provided for the actual commission of the offense to which the conspiracy was directed.

Defendants were indicted, tried and convicted in the Superior Court upon four charges: (1) Conspiracy to violate 4 *Del. C.* § 901(4), selling alcoholic liquor without a valid license; (2) Conspiracy to violate 11 *Del. C.* § 665, keeping a gambling house; (3) Conspiracy to violate 11 *Del. C.* § 734, keeping a house of ill fame; (4) Conspiracy to violate 4 *Del. C.* § 901(2), keeping and selling alcoholic liquor in a disorderly house.

Defendant Robert Steele was sentenced to be imprisoned for a term of three years; defendant George Steele was sentenced to a term of four years; Willie Spears to a term of three years. In each case the same sentence was imposed on all charges to run concurrently. Defendants appeal to this court, alleging error on the part of the trial judge in the sentences imposed.

Defendants contend that 11 *Del. C.* § 105, is unconstitutional in that it violates Article I, Section 7, and Article II, Section 1, of the Constitution of Delaware 1897, as amended, and the Fourteenth Amendment to the Constitution of the United States.

11 *Del. C.* § 105, is as follows:

"*Crimes or offenses without specific punishment; common law crimes.*

"Whoever commits or is guilty of an assault, battery, cheat, conspiracy, nuisance or any other offense indictable at common law for which punishment is not specifically prescribed by statute shall be fined in such amount, or imprisoned for such term, or both, as the court, in its discretion, may determine."

Article I, Section 7, of the Delaware Constitution is as follows:

"In all criminal prosecutions, the accused hath a right to be heard by himself and his counsel, to be plainly and fully informed of the nature and cause of the accusation against him, to meet the witnesses in their examination face to face, to have compulsory process in due time, on application by himself, his friends or counsel, for obtaining witnesses in his favor, and a speedy and public trial by an impartial jury; he shall not be compelled to give evidence against himself, nor shall he be deprived of life, liberty or property, unless by the judgment of his peers or by the law of the land."

Article II, Section 1, of The State Constitution reads:

"The legislative power of this State shall be vested in a General Assembly, which shall consist of a Senate and House of Representatives."

■ Defendants' first objection has two prongs: first, that the failure of Section 105 to place any limit upon the court in passing sentence upon persons convicted is in violation of Article I, Section 7, of the Delaware Constitution, requiring a defendant to be plainly and fully informed of the nature and cause of the accusation against him and as against the due process clause of the Fourteenth Amendment to the Constitution of the United States; secondly, that Section 105 violates Article II, Section 1, of the State Constitution in that it constitutes an unlawful delegation of power by the Legislature to the Judiciary. The latter objection is based upon the fact that Section 105 does not provide any minimum or maximum sentence as to either fine or imprisonment.

Defendants' first point is not clear to us. As we understand defendants' objection, it is that Section 105 prevents defendants from being "plainly and fully informed of the nature and cause of the accusation against" them. Defendants state that it is impossible under this section for a defendant to know prior to his

being sentenced the consequences and results which could occur in the event that he is found guilty of a violation of the statute.

■ We are completely unable to follow defendants' argument. Certainly there is no merit to this contention. We fail to see how the sentencing of the defendants—of itself and without any connection with their indictment and trial—could possibly be in violation of this section of the State Constitution or of the due process clause of the Fourteenth Amendment to the Federal Constitution. These constitutional provisions relate to the "accusation", not to the proceedings after conviction. An accusation has been defined as "a charge made to a competent officer against one who has committed a crime, so that he may be brought to justice and punishment." 1 *Bouv. Law Dict., Rawle's Third Revision*, p. 112. In its broadest sense it includes indictment, presentment, information and any other form in which a charge of crime or offense can be made against an individual. *Gordon v. State*, 102 *Ga.* 673, 29 *S. E.* 444. But when the person accused has been tried and found guilty, the charge or accusation is determined and the judgment of conviction takes the place of the accusation. *State ex rel. Cutsinger v. Spencer*, 219 *Ind.* 148, 41 *N. E.* 2d 601, 602; *People v. Bauman*, 3 *N. Y. Cr. R.* 454, 457. In the case before this court defendants do not attack the validity of the judgment. It must therefore be presumed to have been obtained in due course of law. In our opinion the constitutional provisions above referred to relate to the charge of which defendants are accused, not to the sentence of the court after conviction. There is no merit to this contention.

Defendants' second objection to the constitutionality of Section 105 is that this section violates Article II, Section 1, of the State Constitution in that it constitutes an unauthorized and unlawful delegation of power by the Legislature to the Judiciary. Defendants' objection is based upon the fact that Section 105 does not provide for any minimum or maximum sentence as to either fine and imprisonment but leaves the sentence entirely to the discretion of the trial court.

The language found in 11 *Del. C.* § 105, is found in the Laws of Delaware 1826 (6 *Del. Laws*, Ch. 362, Section 2), in practically the same form in which it now appears. This section is also substantially identical to the sentence provisions in a number of secions of the Code relating to many other crimes: 11 *Laws of Delaware*, Ch. 418 (1857), providing that punishment for obtaining goods by false pretense shall be fine and imprisonment, or both, as the court shall determine proper under the circumstances; 16 *Del. Laws*, Ch. 155 (1879) relating to the neglect of his duty by the Sheriff with respect to tramps; 16 *Del. Laws*, Ch. 155, relating to unlawful acts by tramps.

■ Defendants apparently concede that 11 *Del. C.* § 105, is but a re-statement of the English common law. Except as insofar as it has been found to be inconsistent with our statutory law, the common law of England is a part of the law of this state. It was first adopted in the Constitution of 1776, Article 25. The same section was re-enacted in each of the three succeeding constitutions: Constitution of 1792, Article VIII, Section 10; Constitution of 1831, Article VII, Section 9; and in our present Constitution of 1897, Schedule, § 18.

■■ Under the common law, where no specific punishment has been provided by statute, the sentence is left to the discretion of the trial court. This discretion is, however, subject to certain restrictions: first, that the court shall do nothing contrary to *Magna Carta* and the fundamental principles of the legal system, and in the precedents which the courts themselves have laid down in a variety of decisions. 1 *Chitty's Criminal Law* 580. Conspiracy was indictable and punishable by common law. 3 *Chitty's Criminal Law*, 902. Courts in this country have generally held that defendants convicted of crimes under the common law for which there is no statutory punishment may be subject to fine or imprisonment, or both, according to the precedent of the common law. *Owens v. Warden of Maryland House of Correction*, 190 *Md.* 737, 60 *A.* 2d 184; *Commonwealth v. Kelsea*, 103 *Pa. Super.* 399, 157 *A.* 42. See 24 *C. J. S. Criminal Law*, § 1980.

Since Section 105 is concededly merely a restatement of the common law, this rule is equally applicable here.

Defendants contend that the trial judge in imposing a greater sentence for conspiracy than could have been imposed for the commission of the offenses themselves was guilty of an abuse of discretion.

Most of the cases cited by defendants in support of their contention deal with the attempt to commit the offense. It is easy to understand that an attempt to perform a criminal act should not call for a greater punishment than in a case where the act is actually committed. A different picture, we think, may be presented in the case of a conviction for conspiracy.

We do not agree with defendants' contention. We think that it is contrary to the better reasoning and the majority opinion in this country. See cases cited in 15 *C. J. S. Conspiracy* § 96, p. 1165. Concededly Section 105 is merely a re-statement of the common law. Under the common law sentence is left entirely to the discretion of the trial judge. There is no limitation expressed or implied that the sentence for conspiracy shall not exceed that for the commission of the offense itself. The crime of conspiracy is distinct from the crime or crimes which are the object of the conspiracy. *Pinkerton, et al., v. U. S.,* 66 *S. Ct.* 1180, 328 *U. S.* 640. It may be, and frequently is, much more heinous than the offense itself. *U. S. v. Rabinowich,* 35 *S. Ct.* 682, 685, 238 *U. S.* 78, 88. It is characterized by secrecy, making it more difficult to convict and punish offenders. Frequently, as here, the conspiracy is for the purpose of subverting the law by preparing the conspirators for further and habitual criminal practice of a series of offenses. Undoubtedly the trial judge under the facts of this case concluded that the charge of conspiracy was a much greater offense than the commission of the offenses to which the conspiracy related. We think that the evidence fully supported his conclusion.

Defendents cite certain recent English cases to support their

contention that under English law a defendant may not be sentenced to a fine or imprisonment, or both, greater than the maximum sentence for the commission of the offense itself. The cases cited are *Rex v. Morris,* 1 *K. B.* 394 (1952), *Rex v. Higgins,* 1 *K. B.* 7, 8 (1952), and *Regina v. Pearce,* 1 *Q.B.* 30 (1953).

Assuming the correctness of defendants' contention, as previously stated, such a construction would be contrary to the majority opinion in this country. Nevertheless, we shall consider the relevancy of these cases.

An examination of these cases indicates clearly that they do not support defendants' contention. In the *Morris* case the defendant had been convicted of smuggling. The evidence indicate that while the defendant was convicted of only one offense, he had been engaged in smuggling for quite a considerable period of time. The court stated that it was customary in misdemeanors under the common law not to sentence for a term greater than the sentence for the commission of the offense itself but that since penal servitude and imprisonment with hard labor had been abolished, there was now no reason why, in a proper case, a court should not impose a sentence for conspiracy which would be longer than that for the commission of the offense itself. The court went on to say that the evidence indicated that the defendant had been engaged in smuggling for a considerable period of time and that under the circumstances the trial court was warranted in imposing a sentence greater than that prescribed for the offense itself.

In the *Higgins* case the court specifically approved the language of Chief Justice Goddard in the *Morris* case, but by reason of certain facts brought to the court's attention, the court, with some hestitation, decided to reduce the sentence and substitute one of twenty-one months.

In the *Pearce* case defendant was convicted of an attempt to take and drive away a motor car without the consent of the owner. There the court very properly held that in the case of an

attempt—in contrast to conspiracy—the defendant could not be punished for a term longer than for the commission of the offense itself. In this case also the court approved its prior holding in the *Morris* case, stating that in that case it was shown that the smuggling had been going on for a very long time and the conspiracy was one of the most dangerous descriptions.

In the case before this court, defendants were indicted for a number of offenses. While it may be said that they all arose out of the same circumstances, nevertheless, the evidence clearly indicated that defendants had been engaged in a conspiracy involving a contemplated habitual criminal practice. We think that the facts of this case are somewhat parallel to the facts in the *Morris* case and come within the statements of the law laid down in all three cases.

The judgment of the Superior Court will be affirmed.