Bruce G. MANLOVE, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 544,2005.

Supreme Court of Delaware.

Submitted: April 26, 2006.
Decided: June 9, 2006.

Ronald G. Poliquin, Esquire, Young, Malmberg & Howard, Dover, Delaware, for appellant.

John Williams, Esquire, Department of Justice, Dover, Delaware, for appellee.

Before HOLLAND, BERGER and JACOBS, Justices.

HOLLAND, Justice.

This is defendant-appellant Bruce G. Manlove's direct appeal from a final judgment of the Superior Court. Manlove was originally arrested for the offenses of Robbery in the First Degree,[1] Conspiracy in the Second Degree—Agreement to Aid Another in Felony,[2] and Assault in the Third Degree.[3] The first trial resulted in Manlove's acquittal on the conspiracy count and a hung jury on the two other counts.

Manlove's second trial began on June 19, 2005, and ended June 20, 2005. During deliberations, the jury sent a note to the trial judge which stated: "Robbery I—can it be an accessory to a crime?" Manlove's defense counsel objected to any affirmative answer to the jury's question because it was not included in the indictment and Manlove was acquitted of conspiracy at the earlier trial. The prosecutor requested that the trial judge read title 11, section 275(a) of the Delaware Code to the jury.

The trial judge decided to give no instruction to the jury as to accomplice liability,[4] and simply read title 11, section 275(a) of the Delaware Code: "A person indicted for committing an offense may be indicted as an accomplice to another person guilty of committing the offense." The trial judge then added, "that is the law of the State of Delaware." Shortly thereafter, the jury found Manlove guilty of Robbery in the First Degree and acquitted him of Assault in the Third Degree. The Superior Court denied Manlove's post-trial motion for a judgment of acquittal or in the alternative to set aside the judgment of conviction. Manlove was sentenced to be incarcerated for life as an habitual offender.

Manlove raises several contentions on appeal regarding the propriety of the trial judge's supplemental instruction in response to the jury's note. Manlove first argues that, since he was indicted as a principal, the jury should not have been permitted to consider potential accomplice liability for the charge of Robbery in the First Degree. Second, Manlove submits that since he was found not guilty of Conspiracy in the Second Degree at his first

---

1. Del.Code Ann. tit. 11, § 832 (2004).

2. Del.Code Ann. tit. 11, § 512 (2004).

3. Del.Code Ann. tit. 11, § 611 (2004).

4. Del.Code Ann. tit. 11, § 271 (2004).

trial, any jury conviction potentially premised on accomplice liability at the retrial was legally improper. Third, Manlove contends that his acquittal on the companion Assault in the Third Degree allegation is logically inconsistent with a jury finding of guilty for the Robbery in the First Degree charge. Finally, Manlove argues that the jury should not have been permitted to consider him vicariously liable as an accomplice, because that theory was never argued by the State at trial and no accomplice liability instruction was given.

In this appeal, the State acknowledges that it never argued accomplice liability to the jury at Manlove's retrial. The record reflects that the State did not ask the trial judge to instruct the jury on accomplice liability pursuant to title 11, section 271 of the Delaware Code. Nevertheless, the State contends that the trial judge's response to the jury's question in this somewhat unique circumstance, where neither side was actually arguing accomplice liability, "was still appropriate since the instruction given was brief in nature and correctly stated the substance of Delaware law." The record does not support the State's argument.

▪ Trial judges have broad discretion in responding to questions from a jury during the course of deliberations.[5] The particular response given by the trial judge in Manlove's case, however, was confusing and misleading.[6] We conclude that the supplemental instruction the trial judge gave to Manlove's jury in response to the jury's note, undermined the jury's ability to perform its duty in returning a verdict.[7] Therefore, the judgment of the Superior Court must be reversed.

### Facts

At the time of the crimes, Jessie Slater was living on Lambert Drive in Magnolia, Delaware. About 4 p.m. on April 6, 2004, Slater left the house with one of her two pitbull puppies. At the end of the driveway, Slater met an adult male who had stepped out of the passenger side of a blue Mazda automobile with temporary Delaware tags. He asked about the puppy. According to Slater, the driver remained in the car.

When Slater said she did not want to sell the dog, the man became agitated and tried to convince her to sell him the puppy. They began to argue. The man struck Slater on the left side of her face and took the puppy. When Slater tried to retrieve her dog, the attacker pushed her in the chest. He got back into the car with the puppy and the driver of the vehicle drove away.

Delaware State Police Trooper Alexander Argo interviewed Slater on the day of the robbery. He noted that she had a red mark underneath her left eye and another red mark on her upper chest. Slater told Officer Argo that her attacker was a black male, five feet, ten inches tall, and who weighed 200 pounds.[8]

Delaware State Police Trooper Andrew Goode interviewed Slater on April 15, 2004, at Troop 3 regarding the robbery nine days earlier. Previously, Slater had supplied the police with the names of two suspects, Bruce G. Manlove and Deshawn Harris. At the April 15 interview, Officer

---

**5.** *See Cabrera v. State,* 747 A.2d 543, 545 (Del.2000).

**6.** *Id.*

**7.** *See Flamer v. State,* 490 A.2d 104, 129 (Del. 1983), *cert. denied,* 464 U.S. 865, 104 S.Ct. 198, 78 L.Ed.2d 173 (1983).

**8.** The following day, Slater saw her assailant riding in a car near Dover.

Goode showed Slater a six-photograph lineup and Slater identified Manlove as the robber. When Slater was shown a second photographic array containing Deshawn Harris' photograph, she did not recognize anyone.

Based on Slater's identification, Officer Goode interviewed Manlove about the April 6 incident. Manlove admitted to the police that he saw a female walking on Lambert Drive with a pitbull puppy. According to Manlove, he was driving and Mike Pearsall was riding in the front passenger seat. Manlove said he remained in the car while Pearsall went behind Slater's house to look at the puppy. Manlove told Officer Goode he did not know what occurred while Pearsall was behind the house, but that Pearsall did return to the car with the puppy. Manlove denied striking Slater.

At the conclusion of the April 16 interview with Manlove, Officer Goode had Slater examine a third photographic array. That group of photographs included one of Mike Pearsall. Slater was unable to identify anyone.

At the retrial, Slater identified Manlove as the individual who struck her and took her puppy. Manlove elected not to testify. His mother, Mary A. Brady, was the sole defense witness. She testified that Manlove had his sister's name and date of death tattooed on his neck. Manlove's defense was that Slater had mistakenly identified Manlove as her assailant.

### Jury's Note and Judge's Response

■ After the jury retired for deliberations, it submitted a note to the trial judge, asking: "Robbery 1—can it be an accessory to a crime?" Following a discussion with counsel, the trial judge decided not to give a jury instruction on accomplice liability[9] since "there is no request" from either side for such a supplemental instruction. The trial judge ruled:

> It seems to me that the—it may be a fair response at this point to say that, in response to the note that the Court simply read, Subsection A of Title 11, 275, period. . . .

> That would appear to the Court—based upon statements of counsel thus far, that would be an appropriate response, since it is the law of the State. Because it seems to me what is being requested here—there's a question in someone's mind in the jury that they're focusing on accessory to crime. And I think that's the only thing we can answer because we cannot give the jury any other instructions than—of the law of Delaware that would apply to this case—that would apply in this case given the circumstances.

The trial judge responded to the jury's note by stating:

> All right. Members of the jury, the Court has received a note from the jury. And what the Court is going to do—I'm going to read the note back and, then, the Court will give you an answer.

> The note is: Robbery 1—can it be accessory to crime? Members of the jury, what I will tell you is this: A person indicted for committing an offense may be convicted as an accomplice to another person guilty of committing the offense, that is the law of the State of Delaware.

The jury resumed deliberations. Later that day, the jury returned its verdicts, finding Manlove guilty as charged of Robbery in the First Degree, but not guilty of the companion charge of Assault in the Third Degree.

9. Del.Code Ann. tit. 11, § 271 (2004).

### Manlove's First Trial—Conspiracy Acquittal

At Manlove's first trial in May 2005, the jury was instructed on Count 2 of the indictment alleging Conspiracy in the Second Degree, as follows:

Count 2 of the indictment charges the defendant, Bruce G. Manlove, Senior, with conspiracy in the second degree in violation of Title 11 Delaware Code, Section 512. Delaware law defines the offense of conspiracy in the second degree in pertinent part as follows:

A person is guilty of conspiracy in the second degree when, intending to promote the commission of a felony, the person:

One, agrees with another person or persons that they or one or more of them will engage in conduct constituting the felony.

Two, and the person commits an overt act in pursuance of the conspiracy.

In order to find the defendant guilty of conspiracy in the second degree, you must find that all of the following elements have been established beyond a reasonable doubt:

One, the defendant intended, that is, it was his conscious object or purpose to promote the commission of the felony of robbery.

Two, the defendant agreed with another person, in this case an unidentified person, to engage in conduct which constitutes a felony; and

Three, the defendant committed an overt act in pursuance of the conspiracy. An overt act is any act in pursuance of or in the furtherance of the accomplishment of the purpose of the conspiracy.

If, after considering all of the evidence, you find that the State has established beyond a reasonable doubt that the defendant acted in such a manner as to satisfy all of the elements which I have just stated, at or about the date and place stated in the indictment, you should find the defendant guilty of conspiracy in the second degree.

If you do not so find, or if you have a reasonable doubt as to any element of this offense, you must find the defendant not guilty of conspiracy in the second degree.

At Manlove's first trial, the jury found him not guilty of Conspiracy in the Second Degree, but was unable to reach a verdict on the two remaining charges of Robbery in the First Degree and Assault in the Third Degree. A mistrial was declared on the Robbery and Assault allegations. As a result of the jury's not-guilty verdict on the charge of Conspiracy in the Second Degree, the only remaining charges at Manlove's retrial in July 2005 were Robbery in the First Degree and Assault in the Third Degree.

### Manlove's Second Trial— Only As Principal

Co-conspirator and accomplice liability are different forms of criminal conduct.[10] A conspiracy requires an agreement between co-conspirators, but the object of the conspiracy need not be accomplished. For accomplice liability, generally no prior agreement is required, but the underlying crime must have occurred.[11] Accordingly, Manlove's acquittal of Conspiracy in the Second Degree at his first trial did not collaterally estop the State from seeking a conviction for Rob-

---

**10.** See Del.Code Ann. tit. 11, §§ 271 & 512 (2004).

**11.** Section 271(2)b does require a prior agreement to establish accomplice liability. See State v. Travis, 1992 WL 147996 at *2 (Del.Super.Ct.1992).

bery in the First Degree on the basis of accomplice liability at Manlove's retrial.

■ Nevertheless, the first jury's acquittal on the conspiracy count *did* collaterally estop the State from arguing or presenting evidence at the second trial that Manlove and his companion planned or agreed to steal the puppy from Slater.[12] Because Manlove was acquitted of conspiracy at the previous trial, any conviction based on accomplice liability at his second trial could only be based on Manlove's unilateral actions and could not be based on a plan or an agreement.[13] Therefore, a carefully crafted jury instruction would have been required if an accomplice liability instruction was requested at Manlove's second trial.[14]

However, at Manlove's retrial, the State proceeded exclusively on the basis of his criminal liability as the principal perpetrator of the offenses committed against Slater, rather than as an accomplice. The State apparently decided to avoid the "legal quagmire" presented at the second trial in *Banther*, where following Banther's earlier acquittal on conspiracy, the State relied upon an accomplice liability theory during Banther's retrial.[15]

All of the prosecution's evidence at Manlove's second trial, with the exception of Trooper Goode's recounting of Manlove's interview, suggested that Manlove was the person who confronted Slater, punched her in the face and stole her pitbull puppy. In his opening argument to the jury, the prosecutor summarized the State's case against Manlove, as follows:

> After hearing this case, all the evidence, we will be asking you to convict the defendant of the two offenses that

he is charged with. These are robbery in the first degree and assault in the third degree.

The Criminal Code defines robbery as using force to take property from another and causing physical injury. In this case, the property was the dog, the injury was the black eye. She had a red mark on her chest.

I submit to you at the close of the case that it is really clear that he used that force in order to obtain the property. The elements of the assault are just that he intentionally or recklessly caused physical injury to another.

### Jury's Verdicts Reflect Confusion

The State accused Manlove of punching Slater in the face and stealing her puppy. The jury deliberated for some time before submitting its question to the trial judge. Shortly after receiving the supplemental instruction, the jury convicted Manlove of Robbery in the First Degree and acquitted him on the Assault charge.

By failing to find Manlove guilty of Assault in the Third Degree, it is difficult to explain how the jury could have found Manlove guilty on the Robbery in the First Degree charge. The elements of Assault in the Third Degree, as provided in the jury's instructions, were subsumed within the elements of Robbery in the First Degree and were consistent with the State's theory against Manlove. If the jury believed that Manlove did not cause physical injury to Slater, the jury could not have found the third element of Robbery in the First Degree as provided in the jury instructions.

12. *See Banther v. State*, 884 A.2d 487, 494 (Del.2005).

13. *Id.*

14. *Id.*

15. *Id.* at 494, n. 27.

The jury apparently did not find Slater's identification of Manlove as her assailant to be credible but the jury also apparently did not believe Manlove's statement to the police. This dilemma is the most logical explanation for why the jury asked the trial judge whether Manlove could be convicted of Robbery in the First Degree as an accessory. In fact, before responding to the jury's question, the following exchange took place:

THE COURT: My suspicion is that the jury is questioning on the robbery count because the defendant is being accused of committing the robbery and there was another party in the car. They want to know whether—I suspect, whether Mr. Manlove is merely an accomplice, as opposed to the principal; I think that's why they're getting at that.

PROSECUTOR: I think that's a reasonable conclusion based on the statement that Mr. Manlove gave to the police.

Our request would be that the Court instruct the jury that the law in Delaware is that: A person who is indicted as a principal may be convicted as an accomplice, that's a very clear and correct instruction on the law; and I believe it directly answers the question that they have posed.

. . .

DEFENSE ATTORNEY: Your Honor, Mr. Manlove has not been indicted as an accomplice in this case. The charge in the indictment is rather clear, in addition to the fact that he's been acquitted of the conspiracy charge; but there's been no indictment in—regarding to be an accomplice in this action.

In this appeal, Manlove argues that the trial judge's supplemental instruction misled the jury into thinking that they could convict Manlove as an accomplice to the Robbery in the First Degree charge because the same jury acquitted Manlove of Assault in the Third Degree. The record supports that argument. Since the prosecution did not indict Manlove on an accomplice theory, and no evidence or argument was presented thereafter, the only rational conclusion is that the jury used the trial judge's reading in the supplemental instruction of title 11, section 275(a) of the Delaware Code as its basis for finding Manlove guilty of Robbery in the First Degree.

### Response Requires Reversal

■■■ The primary purpose of jury instructions is to define the principles of law that the jurors must apply when deciding the factual issues involved in the specific case before them.[16] The parties are entitled to all instructions on their legal theories of the case, provided the instructions are timely requested, supported by evidence, and correctly state the law.[17] Delaware law currently provides that a person indicted as a principal may be convicted as an accomplice and that a person indicted as an accomplice may be convicted as a principal.[18] In this case, however, the

16. *Hamann v. State,* 565 A.2d 924, 930 (Del. 1989). *United States v. Anderton,* 629 F.2d 1044, 1048 (5th Cir.1980) (citing *United States v. Gilbreath,* 452 F.2d 992, 994 (5th Cir. 1971)).

17. *United States v. Jerde,* 841 F.2d 818, 820 (8th Cir.1988).

18. Del.Code Ann. tit. 11, § 275 (2004). The debate about principal and accomplice theo-

ries of criminal liability has continued for many years in this State and throughout the country. Under a prior statute, this Court held that an accessory was not a principal and that there could be no conviction of a defendant as an accessory upon an indictment as a principal. *Schwartz v. State,* 185 A. 233, 234–36 (Del.1936). That holding has been set aside by a subsequent decision of this Court and amendments to the statute. *Johnson v.*

State argued that Manlove was the principal perpetrator of the crimes against Slater and suggested no other theory of liability at Manlove's retrial.

In response to the jury's question, the trial judge should have responded that Manlove's culpability as an accessory or accomplice was not an issue to be decided in determining Manlove's guilt on the robbery charge. Instead, the trial judge read section 275(a) without regard to any instruction or definition of accomplice liability as set forth in section 271. The trial judge's reading of section 275(a) gave the jury an incomplete understanding of accomplice liability law as that concept was explained by this Court in *Zimmerman v. State*.[19]

Informing the jury that a principal can be convicted as an accomplice without actual knowledge of the statutory definition of accomplice liability in section 271 created material prejudice to Manlove. With no instruction on accomplice liability, the jury may have convicted Manlove on the generally correct assumption that being an accomplice can involve a plan or an agreement. As a result of Manlove's prior acquittal of conspiracy, however, the possibility that the jury relied on a plan or an agreement to establish Manlove's liability as an accomplice requires a reversal of his conviction on Robbery in the First Degree.[20]

The trial judge's supplemental instruction to the jury constituted reversible error for two independent reasons. First, the trial judge's response to the jury erroneously introduced the concept of accomplice liability into Manlove's case when that issue was irrelevant to the State's exclusive assertion that Manlove was guilty as the principal perpetrator of the crimes against Slater. Second, because an agreement can serve as *one* basis for accomplice liability, *but not in a retrial following an acquittal of conspiracy*,[21] the trial judge's general reference to accomplice liability subjected Manlove to being placed in jeopardy again for the conspiracy charge on which he had been previously acquitted.[22]

### Conclusion

A defendant has a right to a correct statement of the applicable substantive law.[23] A confusing or inaccurate instruction in response to a jury's question requires reversal.[24] In Manlove's case, the trial judge's answer to the jury's question undermined the jury's ability to perform its duty in reaching a verdict. Therefore, the Superior Court's judgment of convic-

---

State, 215 A.2d 247, 250 (Del.1965); Del.Code Ann. tit. 11, § 275. Section 275 currently reads:

(a) A person indicted for committing an offense may be convicted as an accomplice to another person guilty of committing the offense.
(b) A person indicted as an accomplice to an offense committed by another person may be convicted as a principal.

**19.** *Zimmerman v. State*, 565 A.2d 887, 890–91 (Del.1989).

**20.** *Banther v. State*, 884 A.2d 487, 493–94 (Del.2005).

**21.** *Id.*

**22.** *Id.*

**23.** *Miller v. State*, 224 A.2d 592, 596 (Del. 1966).

**24.** *Allen v. State*, 868 A.2d 837, 839 (Del. 2005); *Hamann v. State*, 565 A.2d 924, 930 (Del.1989).

tion must be reversed.[25]   This matter is remanded for a new trial.

---

**25.**  *Sirmans v. Penn,* 588 A.2d 1103, 1108 (Del. 1991); *Allen v. State,* 868 A.2d 837 (Del. 2005).