# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|                          |       |                      |
|--------------------------|-------|----------------------|
| STATE OF DELAWARE,       | )     |                      |
|                          | )     |                      |
|                          | )     |                      |
|                          | )     |                      |
| v.                       | )     | I.D. No. 1409001584  |
|                          | )     |                      |
| CHRISTOPHER RIVERS,      | )     |                      |
|                          | )     |                      |
| Defendant.               | )     |                      |

Submitted: January 7, 2022
Decided: March 31, 2022

*Upon Consideration of Post-Conviction Relief Counsel's Motion to Withdraw*,
**GRANTED**.

*Upon Consideration of Defendant's Motion to Deny Post-Conviction Relief
Counsel's Motion to Withdraw*,
**DENIED**.

*Upon Consideration of Defendant's Motion for Post-Conviction Relief*,
**SUMMARILY DISMISSED**.

## MEMORANDUM OPINION

Maria T. Knoll, Esquire, Chief of Appeals, and Kathryn J. Garrison, Esquire, Deputy Attorney General, DEPARTMENT OF JUSTICE, Wilmington, Delaware. *Attorneys for the State of Delaware*.

Andrew J. Witherell, Esquire, Wilmington, Delaware. *Post-Conviction Relief Counsel*.

Christopher Rivers, Smyrna, Delaware. *Pro se Defendant*.

**BUTLER, R.J.**

Defendant Christopher Rivers was convicted on homicide and related felony weapons and inchoate charges stemming from an infamous "murder for hire" scheme. He has moved *pro se* under Rule 61 for post-conviction relief. Having investigated Rivers's allegations, court-appointed post-conviction relief counsel ("PCR Counsel") now moves to withdraw on the ground that Rivers's motion contains no arguably meritorious claims. The State supports PCR Counsel's motion and Rivers moves *pro se* against it. For the reasons below, PCR Counsel's motion to withdraw is granted and Rivers's motions are denied.

## FACTUAL BACKGROUND

The Court has issued many written decisions in this saga. The relevant facts are taken from one of those decisions.[1]

### A. The Direct Proceedings

Rivers and Joe Connell owned an auto repair business. Connell was recently married to Olga Connell. For a variety of reasons, the business fell on hard times. Rivers decided to alleviate the situation by having his business partner killed.

Rivers enlisted a co-conspirator, Joshua Bey, to carry out the murder. Bey assured Rivers that he knew people who could do that. Bey contacted codefendant Dominique Benson, who contacted codefendant Aaron Thompson. Through the testimony of Bey and corroborating evidence consisting primarily of cell tower

---

[1] *See State v. Benson*, 2016 WL 6196073, at *1 (Del. Super. Ct. Oct. 14, 2016).

2

location data, the State sought to place Thompson and Benson at or near the apartment complex where Joe and Olga Connell were living on the fateful night when, upon returning home from a night out with Rivers, they were murdered outside their apartment. Circumstantial evidence at the crime scene suggested that the Connells were killed by two individuals—or at least two different handguns.

After an investigation that apparently included the early "flipping" of Bey, Rivers and Benson (but not Thompson) were indicted for the murders. Indeed, the State did not identify Thompson at all until trial was underway. Because the Court was unwilling to delay the trial *ad infinitum* until the State indicted Thompson, it was fairly assumed that a second trial would be necessary once Thompson was identified and arrested.

Rivers and Benson were tried together. Rivers was convicted of two counts of Murder First Degree, two counts of Possession of a Firearm During Commission of a Felony, Conspiracy First Degree, and Criminal Solicitation First Degree. Benson was convicted of Conspiracy First Degree, but the jury hung on the remaining counts.

Rivers appealed to the Delaware Supreme Court. He argued New Castle County was an improper venue for his trial and that certain co-conspirator statements should have been excluded as hearsay. The Supreme Court disagreed and affirmed.[2]

---

[2] *See generally Rivers v. State*, 183 A.3d 1240 (Del. 2018).

## B. The Instant Motions

Rivers, proceeding *pro se*, timely moved under Rule 61 for post-conviction relief. He alleges ineffective assistance of counsel claims. The Court appointed PCR Counsel to represent him. PCR Counsel eventually moved to withdraw on the ground that Rivers's claims are meritless. Rivers was given an opportunity to supplement his motion with any arguments he believed PCR Counsel overlooked.

Rivers makes two arguments in his opposition motion. First, he contends the Murder First Degree instruction was defective in that it incorrectly allowed the jury to convict him based on a conspiracy with Bey, the middleman, and not the actual shooter(s). He adds there was no evidence that he ever conspired directly with the shooters or made payment directly to them. Second, he cites Pennsylvania law in arguing that the State was required, but failed, to prove he had "foreknowledge" of how the Connells would be killed.

As explained below, Rivers's arguments lack merit. Accordingly, the Court adopts PCR Counsel's analysis, grants his motion, and denies Rivers's opposition motion. In light of those rulings, Rivers's Rule 61 motion is summarily dismissed.

## STANDARD OF REVIEW

A defendant may move for post-conviction relief under Criminal Rule 61.[3] Rule 61 provides a collateral remedy capable of overturning convictions that lack

---

[3] Del. Super. Ct. Crim. R. 61 (2017).

integrity.[4]  But judgments are presumptively valid.[5]  And Rule 61 does not "allow defendants unlimited opportunities to relitigate" their convictions.[6]  Accordingly, a Rule 61 motion will be denied unless the defendant shows his conviction is not supported by the "sufficient factual and legal basis" that otherwise is presumed.[7]

## ANALYSIS

A Rule 61 analysis proceeds in two steps.  First, the Court must determine whether the motion clears Rule 61's procedural bars.[8]  If the motion is not barred, the Court next reviews the motion's merits on a claim-by-claim basis.[9]  Ineffective assistance of counsel claims generally are not subject to Rule 61's procedural bars.[10]  And neither PCR Counsel nor the State argues otherwise.  So the Court will review—and reject—Rivers's claims and supplemental arguments on the merits.

---

[4] *E.g.*, *Ploof v. State*, 75 A.3d 811, 820 (Del. 2013) (explaining that Rule 61 "is intended to correct errors in the trial process"); *Zebroski v. State*, 12 A.3d 1115, 1120 (Del. 2010) (explaining that Rule 61 balances the law's interest in conviction finality "against . . . the important role of the courts in preventing injustice").

[5] *See, e.g.*, *Parke v. Raley*, 506 U.S. 20, 29 (1992) (recognizing a "presumption of regularity" that attaches to all final judgments); *accord Xenidis v. State*, 2020 WL 1274624, at *2 (Del. Mar. 17, 2020).

[6] *Ploof*, 75 A.3d at 820.  *E.g.*, *Flamer v. State*, 585 A.2d 736, 745 (Del. 1990) (cautioning that, despite the availability of post-conviction review, there must be a "definitive end to the litigable aspect of the criminal process").

[7] Del. Super. Ct. Crim. R. 61(a)(1).  *E.g.*, *Dorsey v. State*, 2007 WL 4965637, at *1– 2 (Del. Nov. 6, 2007).

[8] *E.g.*, *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).

[9] *E.g.*, *State v. Reyes*, 155 A.3d 331, 342 n.15 (Del. 2017).

[10] *See, e.g.*, *Green v. State*, 238 A.3d 160, 175 (Del. 2020).

## A. Rivers's convictions are valid.

### 1. Rivers committed both conspiracy and murder.

Rivers's first argument hopelessly confuses the legal distinction between "inchoate offenses" and liability for the conduct of another (*i.e.*, "accomplice liability").[11] "Inchoate offenses such as conspiracy are punishable as separate offenses" from the substantive offenses they are designed to achieve.[12] Put differently, "[a] conspiracy requires an agreement between co-conspirators, but the object of the conspiracy need not be accomplished."[13] Instead, a conspiracy is complete when one person agrees with another to commit a felony (*e.g.*, a murder) and one of the persons commits an "overt act" in furtherance of the conspiracy.[14]

Accomplice liability is different. As a "general principle of criminal law . . . one cannot be convicted as an accomplice unless the State's proof establishes that the substantive offense was committed by someone."[15] In contrast to conspiratorial liability, "the underlying crime must have occurred" for accomplice liability to attach.[16] Accordingly, a person is liable as an accomplice when the person "intend[s]

---

[11] *Compare* 11 *Del. C.* §§ 501–03 (solicitation), 511–13 (conspiracy), 531 (attempt), *with id.* § 271 (liability for the conduct of another).
[12] *Stroik v. State*, 671 A.2d 1335, 1344 (Del. 1996).
[13] *Manlove v. State*, 901 A.2d 1284, 1288 (Del. 2006).
[14] 11 *Del. C.* § 513. *E.g.*, *Lemons v. State*, 32 A.3d 358, 362–65 (Del. 2011).
[15] *Probst v. State*, 547 A.2d 114, 123–24 (Del. 1988).
[16] *Manlove*, 901 A.2d at 1288.

to promote or facilitate the commission" of a substantive offense and the substantive offense actually is committed.[17]

Importantly, however, a person can be both a conspirator and an accomplice.[18] "The crime of conspiracy is distinct from the crime or crimes [that] are the objects of the conspiracy."[19] But conspiracy also involves "cooperation."[20] So when co-conspirators "intend[] to promote or facilitate the commission" of an offense,[21] and the offense is indeed committed, their liability bifurcates into accomplice (or principal) liability *and* conspiratorial liability.[22] Accordingly, a conspiracy to

---

[17] 11 *Del. C.* § 271(2). *E.g.*, *Claudio v. State*, 585 A.2d 1278, 1281–83 (Del. 1991).
[18] *See, e.g.*, *Holland v. State*, 744 A.2d 980, 982 (Del. 2000) ("A jury's guilty verdict on a conspiracy charge and an acquittal on the underlying felony are not always legally inconsistent verdicts under Delaware law.").
[19] *Steele v. State*, 151 A.2d 127, 130 (Del. 1957) (citing *Pinkerton v. United States*, 328 U.S. 640, 643–44 (1946)).
[20] *Guyer v. State*, 453 A.2d 462, 466 (Del. 1982).
[21] 11 *Del. C.* § 271(2).
[22] *See State v. Vouras*, 351 A.2d 869, 878 (Del. Super. Ct. 1976) ("In Delaware, . . . the crime of conspiracy [is] separate and distinct from the substantive offense . . . . [I]t is clear that conspiracy does not merge with the substantive offense even when the latter is complete[.]" (internal quotation marks omitted)); *cf. Stewart v. State*, 437 A.2d 153, 156 (Del. 1981) ("The Conspiracy Statute has its own 'accomplice liability' language; for it to be invoked, there need be no reference to 11 *Del. C.* § 271 . . . ." By consequence, "there is no merit in the defendant's position that the jury's rejection of § 271 accomplice liability means there must likewise be a rejection of accomplice liability as to the commission of the overt act in a conspiracy.").

commit a murder is complete upon an agreement and overt act and accomplice liability attaches once the planned murder is actually executed by a co-conspirator.[23]

Against this background, Rivers's suggestion that each member of the conspiracy had to know each other lacks merit. No such requirement is spelled out in the statute and such a requirement is illogical anyway. Otherwise, murder planners could escape liability by using intermediaries who in turn hire mercenaries to commit the homicide. They cannot do that.[24] A person is liable as an accomplice for a criminal outcome so long as the result is a "foreseeable consequence" of the person's "underlying felonious conduct."[25]

Here, the evidence showed that Rivers conspired with Bey, who further conspired with Benson and Thompson, to murder the Connells. The fact that Rivers did not pull the trigger does not make him any less guilty of conspiracy or any less

---

[23] *E.g.*, *Manlove*, 901 A.2d at 1288; *see also Thomas v. State*, 467 A.2d 954, 959 (Del. 1983) (separating and validating accomplice liability-based conviction as distinct from conspiracy charge).

[24] *See Broomer v. State*, 126 A.3d 1110, 1113 (Del. 2015) ("Under Delaware law, it is not necessary for a defendant to commit the overt act underlying the conspiracy charge. It is sufficient that a co-conspirator commit the overt act." (internal quotation marks omitted)); *Turner v. State*, 25 A.3d 774, 776 (Del. 2011) (affirming accomplice liability-based conviction where codefendants "divide[d] responsibility" in committing substantive offense); *Martin v. State*, 433 A.2d 1025, 1029 (Del. 1981) ("The inquiry under § 271 is not whether each accomplice had the specific intent to commit murder, but whether [the accomplice] intended to promote or facilitate the principal's conduct constituting the offense." (internal quotation marks omitted)). *see also State v. Cole*, 114 A. 201, 204 (Del. Ct. Gen. Sess. 1921) ("The gist of [conspiracy] is the unlawful combination between the parties.").

[25] *E.g.*, *Hassan–El v. State*, 911 A.2d 385, 394 (Del. 2006).

8

liable as an accomplice.[26] Quite the opposite: the evidence established that Rivers entered a homicidal conspiracy with his codefendants and that the murders were foreseeable consequences of his felonious decision to solicit or promote a contract on the Connells' lives. Accordingly, Rivers's first argument fails.

## 2. Rivers intended his crimes and was not "merely present" at the scene.

With more time on his hands than legal insight, Rivers found a few Pennsylvania cases that reversed convictions based upon the defendant's "mere presence" at the crime scene. He says the State must show his "foreknowledge" of the ways in which Bey and his hired killers would commit the murders.[27] These arguments fail for at least three reasons.

First, Rivers did not need to research Pennsylvania law. Delaware law also holds that "mere presence" at a crime scene is insufficient to impose liability,

---

[26] *See Younger v. State*, 2009 WL 2612520, at \*2 (Del. Aug. 26, 2009) ("An overt act in support of a conspiracy charge need not be a completed crime or even an act that would amount to a substantial step in furtherance of the underlying felony; rather, it may be any act in pursuance of or tending toward the accomplishment of the conspiratorial purpose." (internal quotation marks omitted)); *see also White v. State*, 243 A.3d 381, 400 (Del. 2020) (Like Rivers's interpretation, "White's interpretation, if adopted, would effectively immunize [conspirators who agree to commit class A felonies] from additional liability should they conspire with their confederates to escalate their criminal endeavors—in for a penny, in for a pound. Such a conclusion is at odds with the General Assembly's intent . . . .").

[27] Def.'s Opp. Mot. to PCR Counsel's Mot. to Withdraw at 12 (discussing *Commonwealth v. Fields*, 333 A.2d 745 (Pa. 1974); *Commonwealth v. Roscioli*, 309 A.2d 396 (Pa. 1973); and *Commonwealth v. Swerdlow*, 636 A.2d 1173 (Pa. Super. Ct. 1994)).

conspiratorial or otherwise.[28]  But here, the State never alleged, and no evidence ever suggested, that Rivers was "merely present" when the Connells were killed.  To the contrary, the evidence showed that Rivers was at home, pacing his rooms, and in plain sight of security cameras in his house, which duly recorded his activities.

Second, Rivers is simply incorrect when he argues that the State failed to prove his "foreknowledge" of the homicide.  Bey testified that Rivers solicited his help in murdering the Connells.  Bey methodically walked the jury through all of his interactions with Rivers, his solicitation of Benson and Thompson as the killers, and the many phone calls and text messages between Bey and Rivers and Bey and Thompson.  All this evidence corroborated Bey's testimony that Rivers solicited the homicide and that it was carried out by Thompson and Benson.

Finally, the State was not required to prove that Rivers had "foreknowledge" of the exact way Bey planned to kill the Connells.  Since murder was his goal, Rivers would be guilty even if Bey changed his mind at the last minute and killed the Connells using means different from those the parties originally discussed.[29]  Rivers wanted the Connells killed.  It did not matter to him how they died.

---

[28] *E.g., Dalton v. State*, 252 A.2d 104, 105 (Del. 1969); *State v. Winsett,* 205 A.2d 510, 519 (Del. Super. Ct. 1964).

[29] *See State v. Stiegler*, 105 A. 667, 670–71 (Del. 1918) ("Conspiracy implies concert of design and not participation in every detail necessary to carry the general purpose or design into execution.  Though the common design is the essence of the charge, it is not necessary to prove that the accused came together and actually agreed in terms to have that design and to pursue it by common means.  If it be proved that the

In sum, the jury heard all the evidence, as well as the instructions on accomplice liability. They were convinced beyond a reasonable doubt that Rivers was guilty of Murder First Degree. Rivers's supplemental arguments fail to show that the verdicts were in error or contrary to the law. So his opposition is denied.

**B. Rivers's Rule 61 motion contains no arguably meritorious claims.**

The Court has reviewed PCR Counsel's motion to withdraw, as well as the affidavits of Rivers's trial counsel, the pleadings in this matter, and the original trial pleadings. The Court sees nothing in the record that necessitates further review of Rivers's Rule 61 motion. Accordingly, the Court adopts PCR Counsel's analysis and grants his motion. Given PCR Counsel's analysis, it now "plainly appears" that Rivers is not entitled to post-conviction relief.[30] So the Court summarily dismisses his Rule 61 motion too.[31]

## CONCLUSION

Having found that PCR Counsel correctly deemed Rivers's Rule 61 motion meritless, the Court **GRANTS** the motion to withdraw, **DENIES** the opposition to it, and **SUMMARILY DISMISSES** the Rule 61 motion.

---

accused pursued, by their acts, the same object, often by the same means, one performing one part and another . . . part of the same, so as to complete it, with a view to the attainment of the same object, the jury will be justified in the conclusion that they were engaged in a conspiracy to effect that object." (citation omitted)).

[30] Del. Super. Ct. Crim. R. 61(d)(5).

[31] *Id.*

**IT IS SO ORDERED**.

Charles E. Butler, Resident Judge