IN THE SUPREME COURT OF THE STATE OF DELAWARE

KADAESHA R. JOHNSON, §
§ No. 332, 2025
Defendant Below, §
Appellant, § Court Below—Superior Court
§ of the State of Delaware
v. §
§ Cr. ID No. 2308000243 (N)
STATE OF DELAWARE, §
§
Appellee. §

Submitted: February 25, 2026
Decided: March 18, 2026

Before **SEITZ**, Chief Justice; **TRAYNOR** and **GRIFFITHS**, Justices.

## <u>ORDER</u>

Upon consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1)　Kadaesha R. Johnson appeals her convictions, after a jury trial, for second-degree assault and possession of a deadly weapon during commission of a felony ("PDWDCF"). The parties agree that this matter should be reversed and remanded for a new trial. We concur.

(2)　The evidence presented at trial established that Kadaesha and her mother Celstine Johnson[1] had a verbal and physical altercation with their

---

[1] We refer to the Johnsons by their first names to avoid confusion. No disrespect or familiarity is intended.

neighbors Raney Wooding and Guillermo Rodriguez on July 25, 2023. During the altercation, Wooding testified that she unsuccessfully tried to hit Kadaesha. Kadaesha admitted in a police interview to swinging a wine bottle at Wooding. Kadaesha then ran away and Rodriguez chased after her.

(3) Kadaesha fled to her house and told Celstine what was happening. Celstine came out of the house with a pot of hot oil that she threw at Wooding. Rodriguez testified that Kadaesha followed her mother with boiling water that she threw at Rodriguez and Wooding, but missed them. Kadaesha denied throwing anything.

(4) After Celstine threw the hot oil, Rodriguez testified that she went back into the house and came out again with two knives. By this time a crowd was growing. Celstine tried to stab Rodriguez, but he jumped away. Wooding, Rodriguez, and another person tried to disarm Celstine. When Celstine put a knife to Wooding's throat, Rodriguez started punching her. Celstine moved the blade from Wooding's throat to her face and cut her. Wooding also began hitting Celstine, and Kadaesha grabbed Rodriguez from behind and pulled his hair.

(5) Wooding and Celstine ended up on the ground, fighting each other. While Wooding was on top of Celstine, Kadaesha grabbed Wooding's hair from behind and tried to punch her in the face. Wooding flipped Kadaesha

2

over and punched her multiple times. Men in the crowd eventually broke up

the fight. Wooding was taken to the hospital where she received stitches for a

laceration on her face and treatment for first-degree burns on her stomach and

legs.

(6) A grand jury indicted Celstine and Kadaesha for multiple crimes

relating to the knife-attack portion of the altercation. Celstine pleaded guilty

to PDWDCF, but Kadaesha chose to proceed to trial. The State prosecuted

Kadaesha "wholly on a theory of accomplice liability."[2]

(7) For accomplice liability, the trial judge instructed the jury, in

relevant part:

> In the law a person may be guilty of a crime either as an
> accomplice or as a principal. A "principal" is someone who
> actually commits the criminal acts. An ["]accomplice["] is
> someone who has the same state of mind as the person who
> personally commits the acts and intending to promote or
> facilitate the commission of the crime solicits, requests, commits,
> or otherwise attempts to aid the other person in planning or
> committing the crime or aids, counsels, or agrees to attempt or
> aid the other person in planning or committing a crime.
>
> Physical presence at the scene of a crime is not a requirement of
> accomplice liability. Therefore, the first thing you must decide
> is whether the State has established beyond a reasonable doubt
> that there was an accomplice-principal relationship between the
> defendant and anyone else. . . . .
>
> Your conclusion must be based on an individualized
> determination of the defendant's mental state and culpability for

---

[2] Answering Br. at 14.

any aggravating fact or circumstances. If defendant's conduct constitutes a separate offense, the defendant is liable for that offense only and not for the conduct or offense committed by the principal.[3]

(8) During deliberations, the jury submitted a note with two questions, one relating to accomplice liability. In that question, the jury asked "[i]f an accomplice does not try to stop the principal, is that a chargeable offense?"[4] The trial judge initially proposed referring the jury back to the accomplice-liability instruction, but Kadaesha's trial counsel objected that it was "not a chargeable offense if the accomplice does not try to stop the offense" so "I think the answer is no."[5] The prosecutor disagreed with this response and proposed that the trial judge refer to the indictment and prior instructions.

(9) The trial judge concluded that the answer should be "it depends" because "an accomplice can be charged if they don't stop the principal if the jury determines based upon the evidence presented that the action of not stopping" satisfied the elements of accomplice liability.[6] The trial judge further opined that the jury could decide whether the evidence proved beyond a reasonable doubt "that the failure to stop a principal is aiding, counseling, or

---

[3] App. to Opening Br. at A423-25 [hereinafter "A__"].
[4] A445.
[5] *Id.*
[6] A446.

4

agreeing to attempt or aid the other person."[7]  Kadaesha's counsel objected,

stating:

> I don't think the accomplice has a responsibility to stop the principal.  And I think they're saying that the person, the defendant has obligation to step in and try to stop the crime, and if they don't try to stop the crime, that's a crime in itself and I don't think they have to do that. . . . So the accomplice watched the crime occur--watched the principal commit a crime and just watched it, that's not a crime.[8]

(10)  When the jurors returned to the courtroom, the trial judge

answered their question concerning accomplice liability as follows:

> "If an accomplice does not try to stop the principal, is that a chargeable offense?"
>
> So to answer that question, as often as it is the answer in the legal profession is, it can depend.  That is your job to figure out.  So the defendant as just noted has been charged with 10 separate offenses based on the theory of accomplice liability.
>
> So again according to page 35 of the indictment which you all referenced on line 3, an accomplice is someone who has the same state of mind as the person who personally commits the acts and intending to promote or facilitate the commission of the crime solicits, requests, commits, or otherwise attempts to aid the other person in planning or committing the crime; or aids, counsels, or agrees to attempt or aid the other person in planning or committing a crime.
>
> So ironically that is the sentence that controls the answer to this question. So it is your job to determine whether the evidence presented for each crime alleged, separate and distinct, rises to the level of . . . proof beyond a reasonable doubt, to establish that

---

[7] A446-47.
[8] A447-48.

either any action or inaction of the defendant either rises or does not rise to the level of meeting the statutory requirements of accomplice liability.[9]

(11) The jury ultimately found Kadaesha guilty of second-degree assault as a lesser included offense of first-degree assault and one count of PDWDCF. The jury found Kadaesha not guilty of the remaining offenses, including second-degree conspiracy. Kadaesha moved for a judgment of acquittal on the PDWCF conviction, arguing that the testimony was uncontroverted that she did not possess a knife. In response, the State asserted that the jury properly found Kadaesha guilty of PDWDCF in accordance with the principles of accomplice liability. Kadaesha then modified her argument to assert that the PDWDCF conviction could not stand because the jury acquitted her of second-degree conspiracy. The State was permitted to respond to the new argument and contended that denial of the motion for judgment of acquittal was appropriate because accomplice liability and conspiracy are different legal concepts. The Superior Court denied the motion.[10]

(12) The Superior Court sentenced Kadaesha as follows: (i) for second-degree assault, effective October 31, 2024, eight years of Level V

---

[9] A451-52.
[10] *State v. Johnson*, 2025 WL 1503132 (Del. Super. Ct. May 23, 2025).

incarceration, suspended immediately for one year of Level III probation; and

(ii) for PDWDCF, two years of Level V incarceration. This appeal followed.

(13) Kadaesha raises two claims on appeal. First, she argues that the Superior Court erred by instructing the jury that her failure to act could make her liable as Celstine's accomplice. She asserts that this was an incorrect statement of the law and improperly imposed upon her the burden of proving that she attempted to stop her mother from committing the knife-attack. Based on this error, Kadaesha seeks reversal and remand for a new trial.

(14) The State admits that the Superior Court's supplemental jury instruction incorrectly stated the law on accomplice liability and partially relieved the State of its own burden of proof. Accordingly, the State joins Kadaesha in her request for reversal of the judgment and remand of this case for a new trial.

(15) The State's confession of error "is in accordance with the highest traditions of the Delaware Bar and the prosecutor's unique role and duty to seek justice within an adversary system."[11] Notwithstanding this confession of error, we must make an independent determination that the Superior Court committed a reversible error in its supplemental jury instruction on accomplice

---

[11] *Weddington v. State*, 545 A.2d 607, 616 (Del. 1988).

liability.[12] The Superior Court has broad discretion when responding to jury questions during deliberations, but this Court will reverse when the judge's response to a jury note undermines the jury's ability to perform its duty in returning a verdict.[13]

(16) The Court agrees with the parties that the Superior Court's supplemental jury instruction concerning accomplice liability constitutes reversible error. Under the Delaware Criminal Code, "[a] person is guilty of an offense committed by another person when . . . [i]intending to promote or facilitate the commission of the offense the person":

a. Solicits, requests, commands, importunes or otherwise attempts to cause the other person to commit it; or
b. Aids, counsels or agrees or attempts to aid the other person in planning or committing it; or
c. Having a legal duty to prevent the commission of the offense, fails to make a proper effort to do so….[14]

Subsection c, which contemplates the accomplice's failure to act, is inapplicable here because prosecutor did not argue that Kadaesha failed to comply with a legal duty to prevent Celstine's knife attack. The prosecutor instead argued that Kadaesha "facilitated," "assisted," "helped," "participated [in]," and "aided or attempted to aid" the knife-attack.[15] The parties agreed

---

[12] *Id.* at 612 ("A confession of error does not require the reversal of the judgment of conviction in the trial court.").
[13] *Manlove v. State*, 901 A.2d 1284, 1286 (Del. 2006).
[14] 11 *Del. C.* § 271(2).
[15] A380–84; A390.

that the trial judge would instruct the jury on subparagraphs a and b, not c.  In the absence of any argument that Kadaesha owed a legal duty, the trial judge misstated the law when she responded to the jury's note by stating that failure to act could rise to the level of accomplice liability.  This undermined the jury's ability to perform its duty in returning a verdict and requires reversal of Kadaesha's convictions.

(17)  Second, Kadaesha argues that the trial judge's failure to inform the jury that mere presence at the crime scene is insufficient to prove accomplice liability as set forth in the pattern instruction constituted plain error.  The trial judge instead instructed the jury, without any objections, that "physical presence at the scene of the crime is not a requirement of accomplice liability."[16]  Given the other jury instructions, the State contends that the absence of a mere presence instruction did not constitute plain error.  The State describes this absence as compounding the error that already existed—the trial judge erroneously instructing the jury that inaction could support a finding of accomplice liability—but not creating the error.  In light of the error already warranting reversal of the judgment, the State and Kadaesha concur that it is unnecessary for this Court to resolve whether the absence of a mere presence instruction constitutes plain error.  We agree and do not resolve this issue.

---

[16] A424, A521.

9

NOW, THEREFORE, IT IS ORDERED that Kadaesha's convictions are REVERSED, and this matter is REMANDED to the Superior Court for a new trial.  Jurisdiction is not retained.

BY THE COURT:

*/s/ Collins J. Seitz, Jr.*
Chief Justice